## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ASHLEY VANN,

      Plaintiff,                            Hon.

v.

                                                    Case No.

JEFFREY S. FREEMAN, Esq.,
and the LAW OFFICES OF JEFFREY S.
FREEMAN, a Michigan Professional Limited
Liability Company,

      Defendants.

---

## COMPLAINT
## AND DEMAND FOR JURY TRIAL

## INTRODUCTION

This case involves the shockingly corrupt and deceitful scheme by a Michigan tax attorney, Jeffrey S. Freeman ("Freeman"), to steal in excess of $6.5 Million from his client by misrepresenting the amount of penalties and interest that his client, Ashley Vann ("Ashley") owed to the Internal Revenue Service ("IRS").

Freeman was retained to negotiate a settlement of Ashley's tax obligations. As part of his scheme, Freeman requested the total amount of the tax liability be held in his client trust account during the negotiations. Freeman

and Ashley agreed that Freeman would be entitled to 5% of the tax savings as his attorney fee.  But Freeman wanted more.  Although Freeman's efforts resulted in the IRS agreeing to write-off all penalties and interest, Freeman withheld that information from Ashley.  Despite the fiduciary duties owed to his client, Freeman lied to Ashley and misrepresented that he paid $6.5 Million of her money to the IRS in settlement of the outstanding penalties and interest, when in reality he simply kept her money.

At the time of the embezzlement, in 2013, and for the years following, Freeman fraudulently concealed his wrongdoing and continued to mislead Plaintiff that the total amount paid to the IRS was $14,909,301, when it was actually $8,409,301.   Plaintiff only discovered Freeman's fraud and embezzlement in June of 2019.

## THE PARTIES

1.    Plaintiff Ashley Vann ("Ashley") is a Canadian Citizen whose principal residence is in the country of Spain.

2.    Defendant Jeffrey S. Freeman, Esq., is an attorney licensed in Michigan who practices law through the Law Offices of Jeffrey S. Freeman, with offices located at 2051 Villa Road, Suite 105, in the City of Birmingham, Oakland County, Michigan.   All of Jeffrey S. Freeman's acts and omissions occurred within the scope of his employ, authority, and capacity as a representative of

the Law Offices of Jeffrey S. Freeman.  The Law Offices of Jeffrey S. Freeman is,
therefore, vicariously liable under principles of *respondeat superior*.

3.     Defendant Law Offices of Jeffrey S. Freeman is a Michigan
professional limited liability company with corporate offices at 2051 Villa Road,
Suite 105, Birmingham, Oakland County, Michigan.  (Defendants are hereinafter
collectively referred to as "Freeman").

## JURISDICTION AND VENUE

4.     This Court's jurisdiction is based on 28 U.S.C. 1332(a) (2) as the
matter is between a citizen of the State of Michigan and a citizen of Canada.

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1)
as Defendants are residents of the State of Michigan.

## STATEMENT OF FACTS

6.     In the late 1990s, Plaintiff started selling a skin care product known
as Dermal Tone in the United States, which proved to be very profitable.

7.     As a result of this success, Plaintiff began to expand her Dermal
Tone business internationally, and, in during years 2000 and 2001, she invested
a significant amount of the profits earned from the U.S. sales into her start-up
efforts in Europe, which she understood would reduce her U.S. income tax
liability.

8.     Ultimately, Plaintiff decided to forego the expansion of her business

into Europe, and therefore needed to amend her U.S. income tax returns given that the monies she had invested internationally were no longer tax deductible.

9.    In June 2003, with the assistance of tax and accounting professionals, Plaintiff filed amended U.S. income tax returns for tax years 2000 through 2002, which in addition to the tax obligation that she expected, reflected a significant amount of penalties and interest outstanding.

10.    While Ashley was prepared to simply pay all of the taxes, penalties and interest owing, her professional tax advisers recommended she file an Offer in Compromise to the IRS seeking an elimination, or at least reduction, of the penalties and interest, as well as possibly some of the tax liability.

11.    Ultimately, in or about 2012, while the negotiation process continued, Ashley learned that she was under investigation by the criminal division of the IRS regarding the unpaid taxes, penalties, and interest.

12.    Unfortunately, Ashley's counsel indicated he was not comfortable in dealing with a potential criminal tax investigation, and thereafter withdrew from helping her, failed to forward any correspondence he had received from the IRS and otherwise stopped communicating with Ashely.

### Plaintiff retains Jeffrey S. Freeman.

13.    Therefore, in the spring of 2012, Ashley sought out a tax attorney qualified to represent her and ultimately found Defendant Freeman to help

4

resolve her IRS tax liability.

14.    Ashley contacted Freeman in May 2012, and after explaining the little bit she understood of her situation, Freeman agreed to take over the negotiations with the IRS.

15.    Shortly after being retained, Freeman, who knew that Ashley did not know the specifics of the IRS' claim, represented to Ashley that the total amount of taxes, interest, and penalties being sought by the IRS was approximately $19.3 Million, with interest and penalties comprising more than $10.9 Million.

16.    As consideration for Freeman's services, Ashley agreed to pay Freeman a fee of 5% of any savings on the penalties and interest.

***Money transferred to Freeman's Client Trust Account***.

17.    Upon being retained, Freeman recommended that Ashley transfer the full $19.3 Million of her total exposure to his client trust account.

18.    However, Ashley was not able to liquidate that much money, but by November 2012, she was able to liquidate $15 Million in assets from the Perth Mint in Australia which funds she ultimately wired to Freeman's client trust account.

19.    But, before the Perth Mint would participate in the transfer of $15 Million to the United States, the Perth Mint required a letter from the IRS

agreeing that the funds could be transferred to Freeman's client trust account and that the IRS expected to be paid all the monies being transferred.

20.    In response, Freeman emailed the manager at the Perth Mint indicating that the IRS could not write them directly because of privacy and disclosure laws, but did provide a letter from an IRS Revenue Officer addressed to Freeman confirming that Ashley was transferring funds to Freeman's client trust account and that all of the funds would be forwarded by Freeman to the IRS for payment of her tax obligations.  (See November 16, 2012 E-mail and letter attached hereto as ***Exhibit 1***).

### *Freeman's negotiations with, and misrepresentations regarding, the IRS.*

21.    After the $15 Million was wired to Freeman's client trust account, Freeman advised Ashley that the best strategy was to i) pay the unpaid tax portion of the IRS' claim of $8,409,301, and ii) hold back the balance of the funds to strengthen his negotiating position in seeking a reduction of the penalties and interest, which he continued to represent were in excess of $10.9 Million.

22.    Sometime thereafter, once the unpaid taxes were paid, Freeman sent the IRS a Penalty Abatement letter requesting the removal of all penalties and penalty related interest against Ashley asserting legitimate reasonable cause.

23.     After months elapsed, Freeman contacted Ashley in August 2013 and represented that the IRS had refused to issue a decision on their abatement request, and therefore, that he would need to travel to Las Vegas for a purported August 26, 2013 meeting with the IRS.

24.     However, it is highly unlikely that this August 26, 2013 meeting ever occurred, as Ashley has recently learned that the IRS had already "written-off" all unpaid penalties and penalty related interest assessed as of May 2, 2013. (See portions of an IRS account transcript sent by Freeman to Plaintiff with a letter he sent her dated May 22, 2019, **Exhibit 2**.)

25.     After the purported August 26, 2013 meeting, Freeman contacted Ashley and represented to her that the IRS agreed to "accept" a reduced amount of $6.5 Million as payment in full of the outstanding penalties and interest, rather than the $10.9 Million that Freeman continued to represent was outstanding.

26.     In reliance on her lawyer's representations, Ashley authorized the payment which Freeman thereafter represented was paid to the IRS to fully resolve the penalties and interest she allegedly owed for tax years 2000-2002.

27.     Shortly thereafter, Ashley requested that Freeman provide her with written confirmation that her IRS obligation was fully resolved as she needed it for her bank.

28.    In response, on September 18, 2013, Freeman sent Ashley a letter directed to "whom it may concern" which stated that Ashley's matters before the IRS were "resolved favorably" and that "all taxes have been paid in full". (See September 18, 2013 Letter attached hereto as ***Exhibit 3**, emphasis added*).

29.    Based on what she believed was the outcome of the issues with the IRS, Ashley agreed to allow Freeman to keep the purported $90,699 remaining in his trust account and also sent him an additional $131,729 as the balance of the $222,428 allegedly owing for legal fees, in reliance on Freeman's representation that he saved her approximately $4.4 Million in penalties and interest[1].

### *Plaintiff's discovery of Freeman's embezzlement.*

30.    Nearly 6 years later, on May 20, 2019, Ashley's bank inquired into her prior issues with the IRS as part of its Know Your Customer requirements implemented by the U.S. Financial Crimes Enforcement Network for banks in the U.S. and abroad.

31.    Although Ashley provided her bank with another copy of Freeman's September 18, 2013 letter (***Exhibit 3***), they insisted on documentation directly from the IRS detailing the amounts paid, and so Ashley

---

[1] The difference between the $19.3 Million Freeman represented was owing to the IRS, and the $14.9 Million Freeman represented that he paid to the IRS on Plaintiff's behalf.

again asked Freeman for further documentation of all monies paid to the IRS.

32.     In response, on May 22, 2019, Freeman provided Plaintiff with a letter indicating that the following taxes were assessed and paid, totaling $8,409,301:

2000 - $3,947,840 – assessed on 7/28/2003 and paid on 11/27/2012

2001 -$3,265,071 – assessed on 7/28/2003 and paid on 11/27/2012

2002-$1,196,390 – assessed on 7/28/2003 and paid on 11/27/2012

(*Exhibit 2*)

33.     As stated previously, the May 22, 2019 letter also attached portions of an IRS account transcript for Ashley for tax years 2000-2002 that confirmed the full payment of the taxes due on November 27, 2012. *Exhibit 2*.

34.     Curiously, although these IRS account transcripts appear to have been retrieved from the IRS' website on May 2, 2013, they had never previously been provided to Ashley by Freeman.

35.     Upon review of the account transcripts, Ashley saw that there was no reference to payment of any penalties and interest, and therefore it did not reconcile with the totals Freeman represented had been paid to the IRS.

36.     On May 23, 2019, Plaintiff contacted Freeman requesting a receipt demonstrating the <u>entire</u> amount that had actually been paid to the IRS.

37.     In response, Freeman claimed that the IRS does not issue

"receipts", and alleged that he had previously provided her with copies of the certified checks paid to the IRS at the time of payment.

38.   Having no record of these checks, Ashley followed up on May 28, 2019 and requested that Freeman provide her with a copy of the prior e-mail that purported to attach the certified checks evidencing all of the payments to the IRS.

39.   On May 30, 2019, Freeman responded by claiming that due to the lapse of time, that neither his office, nor his bank, maintained copies of the certified checks.  (See May 30, 2019 letter attached hereto as ***Exhibit 4***).

40.   Nonetheless, Freeman represented in his May 30, 2019 letter that the following amounts were paid in 2012 and 2013 to resolve Ashley's tax liability:

| | |
|---|---|
| 2000 – Taxes paid | $3,947,840 |
| 2000 – Penalties and Interest paid | $3,501,497 |
| 2001 - Tax paid | $3,265,071 |
| 2001 – Penalties and Interest paid | $2,523,749 |
| 2002 - Tax paid | $1,196,390 |
| 2002 – Penalties and Interest paid | $   924,754 |
| **Total payments:** | **$14,909,301** |

which amounts coincided with what Freeman had previously represented had been paid following the purported August 26, 2013 meeting with the IRS in Las Vegas. (**Exhibit 4**).

41.    However, given her growing concern of Freeman's veracity, Ashley travelled to the United States, and on June 3, 2019, she visited the IRS office in Las Vegas to obtain an updated transcript of her account.

42.    In reviewing the transcripts obtained directly from the IRS, she discovered, for the first time, that no additional funds beyond the income taxes of $8,409,301 had been paid to the IRS, and, contrary to everything Freeman had represented to her for years, all of the penalties and interest were written off. (See Transcripts attached hereto as ***Exhibit 5***).

43.    Based on these revelations, Plaintiff thereafter met with members of the IRS' Criminal Division in Las Vegas who confirmed that the IRS received $8,409,301and that all penalties and interest were written off as of May 7, 2015 and September 7, 2015.

44.    In addition, Ashley learned for the first time that the original amount sought by the IRS for taxes, penalties, and interest for tax years 2000-2002 was only $11,867,374, and not the $19.3 Million as misrepresented by Freeman.

***Freeman fraudulently concealed his wrongdoing for years.***

45.     Freeman fraudulently concealed his fraud, breach of contract, breach of fiduciary duty and embezzlement of Ashley's funds by affirmatively misrepresenting in 2013 that he paid approximately $6.5 Million to the IRS for penalties and interest from Ashley's money held in his client trust account, and reiterated this misrepresentation on May 30, 2019 to further mislead Plaintiff to continue his fraudulent concealment.

46.     Moreover, as Plaintiff's attorney, Freeman owed Ashley the duty to disclose all facts truthfully related to the payment of penalties and interest, including that the IRS had agreed to write off those obligations and therefore, that he was obligated to return the $6.5 Million less his legal fees of Ashley's money being held in his client trust account, all of which he failed to do.

47.     Ashley has not only been damaged by the loss of the over $6.5 Million of her money, and the loss of earnings on those funds since 2012, but because of the willful, malicious, and wanton conduct of Freeman and his breach of her trust as a fiduciary, Ashley has suffered mental anguish, humiliation, and outrage, for which exemplary damages are warranted.

## COUNT I: FRAUD

48.     Plaintiff incorporates by reference the allegations stated in paragraphs 1 through 47 above as if fully stated herein.

49.    Freeman made numerous misrepresentations and omissions of material fact to Plaintiff related to the amount of income taxes, penalties and interest she owed, and paid, to the IRS for tax years 2000, 2001 and 2002 including, but not limited to the following:

   a.  that the total amount of taxes, penalty and interest owed by Ashley to the IRS was $19.3 Million, when it was actually $11,867,373;

   b.  that as of May 5, 2013, at the very latest, Freeman was aware the IRS had "written-off" all of the purported penalties and penalty related interest, but continued to lie to Ashley that monies were still being sought by the IRS;

   c.  that following a purported meeting held in Las Vegas on August 26, 2013, the IRS agreed to accept $6.5 Million for the penalties and interest because of his "efforts", when the IRS actually had already agreed to "write-off" the entire amount of the penalties and penalty related interest;

   d.  that in 2013, because of the purported "agreement" with the IRS, he "paid" $6.5 Million from his client trust account to the IRS on Plaintiff's behalf, when in fact he didn't pay them anything;

   e.  that he had sent Plaintiff copies of purported certified checks via

an email in 2013, when in fact he never sent them because they never existed;

f.   that his purported legal fees were based on a bogus savings of $4.4M in penalty and interest from the false amount allegedly owing to the IRS of $19.3M;

g.   that the fee he claimed to be owed for services rendered, was $222,248, when it was really $172,904;

h.   that funds to be wired to Freeman's client trust account would be forwarded by Freeman to the IRS for payment of Plaintiff's IRS obligations by way of certified check(s), when he kept over $6.5 Million of Plaintiff's money;

i.   that all transfers of funds to/from his office were to pay Plaintiff's tax obligations, and not related to a huge payday for himself; and

j.   that he perpetuated his misrepresentations in May 2019 by falsely claiming he had paid a total of $14,909,301 in taxes, penalties, and interest to the IRS on Plaintiff's behalf in 2012 and 2013, when he only paid them $8,409,301.

50.   In addition, Defendants failed to disclose to Ashley and/or actively concealed from her that i) the IRS had agreed to write-off all the penalties and

interest for tax years 2000-2002, ii) she was entitled to a return of approximately $6.5 Million, and iii) rather than return Plaintiff's property to her, Freeman was keeping in excess of $6.5 Million of her money for himself.

51.     Ashley relied on Freeman's numerous misrepresentations and his intentional failure to disclose the truth when she paid Freeman's fee, and in not taking legal recourse to obtain reimbursement of her money until Freeman's misconduct and concealment was ultimately discovered on June 3, 2019.

52.     As a direct and proximate result of the false and fraudulent misrepresentations and failures to disclose, and Plaintiff's reliance thereon, Ashley has been damaged in the amount of $6,549,524, plus the loss of interest and investment opportunities with this money, as well as having suffered mental anguish, humiliation, and outrage, for which exemplary damages are warranted.

WHEREFORE, Plaintiff Ashley Vann respectfully requests this Court enter judgment in her favor and against Defendants Freeman, jointly and severally, in the amount of $6,549,524, together with interest, costs, exemplary damages, attorney fees and such other relief, including equitable relief, as may be appropriate.

## COUNT II:  BREACH OF FIDUCIARY DUTY

53.     Plaintiff incorporates by reference the allegations stated in

paragraphs 1 through 52 above as if fully stated herein.

54.    As an attorney retained to represent Ashley in negotiating with the IRS on her behalf, Freeman owed Ashley certain fiduciary duties, including but were not limited to the following:

a.    duty of undivided loyalty;

b.    duty of due care;

c.    duty to act in his client's best interests;

d.    duty of full disclosure and honest communication;

e.    duty to make full disclosure of any economic or other interest that the lawyer has that might conflict with the interest of his client;

f.    duty to not engage in conflicts of interest with his client;

g.    duty to obtain the client's informed consent;

h.    duty to reasonably charge the client a fair and conscionable fee; and

h.    duty to safeguard his client's money.

55.    Freeman breached his fiduciary duties owing to Ashley by, *inter alia*:

a.    falsely advising Ashley that the taxes, penalty and interest owed by Ashley to the IRS in May 2012 totaled $19.3 Million;

b.    falsely advising Ashley that the IRS agreed to accept $6.5 Million for the penalties and interest because of his negotiation efforts;

c.      falsely advising Ashley that he paid $6.5 Million from his client trust account to the IRS in 2013 on her behalf;

d.      misleading Ashley to believe that he received only $222,248 in compensation for his services;

e.      failing to safeguard Ashley's money provided to him in trust by failing to return the amount that the IRS agreed to write-off, less his actual fee;

f.      failing to disclose to Ashley and/or actively concealing from her that the IRS had agreed to write off all penalties and interest for tax years 2000-2002;

g.      failing to obtain Ashley's informed consent;

h.      failing to disclose his conflict of interest in keeping the entirety of Ashley's funds entrusted to him for payment to the IRS;

i.      charging a fee that was not fair and conscionable;

j.      fraudulently concealing his wrongdoing and allowing Plaintiff to believe that $6.5 Million had been paid to the IRS in 2013 for penalties and interest; and

k.      engaging in a scheme to embezzle in excess of $6.5 Million from Plaintiff.

56.     As a direct and proximate result of Freeman's breaches of his

fiduciary duties, Plaintiff has been damaged in the amount of $6,549,524, plus the loss of interest and investment of this money, as well as having suffered mental anguish, humiliation, and outrage, for which exemplary damages are warranted.

WHEREFORE, Plaintiff Ashley Vann respectfully requests this Court enter judgment in her favor and against Defendants Freeman, jointly and severally, in the amount of $6,549,524, together with interest, costs, exemplary damages, attorney fees and such other relief, including equitable relief, as may be appropriate.

## COUNT III:
## STATUORY CONVERSION UNDER MCL 600.2919(a)

57.    Plaintiff incorporates by reference the allegations stated in paragraphs 1 through 56 above as if fully stated herein.

58.    As an attorney retained to negotiate with the IRS on Ashley's behalf, Freeman was entrusted with her money, to be used solely to pay taxes, penalties and interest owing to the IRS, and any amount not used were to be returned, less his legal fee.

59.    In this position, Freeman was a trustee of all funds provided to him by Ashley to negotiate the taxes, penalties, and interest with the IRS.

60.    Despite his obligations and duties under the law, Freeman

embezzled in excess of $6.5 Million from Ashley by misappropriating funds belonging to her entrusted to Freeman solely for payment to the IRS or to be returned to Plaintiff, less payment of Freeman's legal fee.

61.     Freeman's embezzlement of Ashley's money, that were transferred to his client trust account for a limited purpose, violates MCL 600.2919(a).

62.     As a direct and proximate result of Freeman's embezzlement, Plaintiff has suffered damages in the amount of $6,549,524, plus the loss of interest and investment opportunities of this money, as well as having suffered mental anguish, humiliation, and outrage, for which exemplary damages are warranted.

63.     In addition, under MCL 600.2919(a), Plaintiff is entitled to treble damages and to recover her costs and attorney fees.

WHEREFORE, Plaintiff Ashley Vann respectfully requests this Court enter judgment in her favor and against Defendants Freeman, jointly and severally, in the amount of $6,549,524, together with an award for treble damages, interest, costs, exemplary damages, attorney fees and such other relief, including equitable relief, as may be appropriate.

## COUNT IV:  COMMON LAW CONVERSION

64.     Plaintiff incorporates by reference the allegations stated in paragraphs 1 through 63 above as if fully stated herein.

65.    As an attorney retained to negotiate with the IRS, Freeman was entrusted with Ashley's funds including approximately $6.5 Million to be used solely to pay the IRS taxes, penalties and interest, and any amount not used was to be returned to Plaintiff, less Freeman's fee.

66.    In this position, Freeman was a trustee of all funds provided to him by Ashley to negotiate the taxes, penalties, and interest with the IRS.

67.    Despite his obligations and duties under the law, Freeman embezzled in excess of $6.5 Million from Ashley by misappropriating funds belonging to Plaintiff entrusted with Freeman solely for payment to the IRS or to be returned to Plaintiff, after payment of his agreed upon fee.

68.    As a direct and proximate result of Freeman's embezzlement, Plaintiff has suffered damages in the amount of $6,549,524, plus the loss of interest and investment opportunities of this money, as well as having suffered mental anguish, humiliation, and outrage, for which exemplary damages are warranted.

WHEREFORE, Plaintiff Ashley Vann respectfully requests this Court enter judgment in her favor and against Defendants Freeman, jointly and severally, in the amount of $6,549,524, together with interest, costs, exemplary damages, attorney fees and such other relief, including equitable relief, as may be appropriate.

## COUNT V:  BREACH OF CONTRACT

69.    Plaintiff incorporates by reference the allegations stated in paragraphs 1 through 68 above as if fully stated herein.

70.    In or about May 2012, Ashley and Freeman entered into an agreement wherein Freeman was retained to take over the negotiations with the IRS.

71.    Ashley and Freeman agreed, pursuant to the retainer agreement, that any amounts remaining from the $15 Million paid to Freeman's trust account after payment of the IRS taxes, interest, and penalties would be returned to Plaintiff, net of 5% of the savings from the actual amounts owed to the IRS, as a legal fee for services rendered.

72.    Freeman breached the retention agreement by failing to return to Plaintiff all of the unused portion of her $15M, less his true legal fees for services rendered.

73.    As a direct and proximate result of Defendants' breach of contract, Plaintiff has been damaged in the amount of $6,549,524 plus interest, costs and attorney fees, plus loss of interest and investment opportunities of this money, as well as having suffered mental anguish, humiliation, and outrage, for which exemplary damages are warranted.

21

WHEREFORE, Plaintiff Ashley Vann respectfully requests this Court enter judgment in her favor and against Defendants Freeman, jointly and severally, in the amount of $6,549,524, together with interest, costs, exemplary damages, attorney fees and such other relief, including equitable relief, as may be appropriate.

### DEMAND FOR JURY TRIAL

The undersigned hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**ALTIOR LAW, P.C.**

s/ Kenneth F. Neuman
Kenneth F. Neuman (P39429)
Jennifer M. Grieco (P55501)
Attorneys for Plaintiff
401 S. Old Woodward, Suite 460
Birmingham, MI 48009
(248) 594-5252
kneuman@altiorlaw.com
Dated: March 31, 2021        jgrieco@altiorlaw.com